Evelyn V. Keyes, Justice
Appellee, Dresser-Rand Group, Inc. (Dresser-Rand), filed suit against its former employees and their new employer, appellants Universal Plant Services, Inc., (Universal) and Ronald Fox, Jr., Adam Fuller, Ryan Hunt, and Timothy Riley (collectively, Former Employees), alleging causes of action for misappropriation of trade secrets, unlawful computer access, conversion, theft, and breach of contract. Universal and the Former Employees filed separate motions to dismiss pursuant to the Texas Citizens Participation Act (TCPA). Following a hearing, the trial court denied Universal's motion to dismiss, and the remaining motions of the Former Employees were overruled by operation of law.
In three appellate issues, Universal argues that: (1) the trial court erred in holding that the TCPA does not apply to Dresser-Rand's claims against it; (2) the trial court erred in denying Universal's motion because Dresser-Rand failed to establish by clear and specific evidence a prima facie case for each element of each claim against Universal; and (3) the trial court abused its discretion in imposing a spoliation presumption against Universal because Dresser-Rand failed to establish the essential elements of spoliation. The Former Employees likewise assert that (1) they met their burden under the TCPA to show that Dresser-Rand's legal action is based on, relates to, or is in response to the Former Employees' exercise of their statutorily-defined constitutional rights of free speech or association; (2) Dresser-Rand failed to establish a prima facie case for each essential element of each of its causes of action against the Former Employees; and (3) Dresser-Rand failed to show that its claims fall under the commercial speech exemption of the TCPA.
We affirm.
Background
Dresser-Rand is, according to its pleadings, "a leading supplier of custom-engineered rotating equipment solutions for the energy industry worldwide," and it provides services "for the energy industry, providing installation, maintenance, and repair for the above referenced rotating, fixing, and reciprocating equipment." Dresser-Rand alleged that it possesses valuable confidential and proprietary information, including "an enormous matrix of data relating to all past and current jobs *351 performed by the company" that permits the company to identify prospective business opportunities, proprietary sales and marketing techniques, and "other confidential and proprietary data, including field service proposals and price markups for past and ongoing bids; contact lists; operations summaries; and annual and monthly business plans."
Before sales employees can access this valuable data, Dresser-Rand asks that they agree to strict confidentiality, among taking other precautions. The Former Employees here-Fox, Fuller, Hunt, and Riley-began working as salesmen for Dresser-Rand in 1990, 1998, 2002, and 2009, respectively. They each signed an "Employment Agreement Relating to Intellectual Property." In this Employment Agreement, the employees agreed, among other things, "During my employment and thereafter, I shall keep secret and confidential and not disclose to any unauthorized person, any secret or confidential information of the COMPANY that I obtain as a result of or during my employment." They also agreed, "I shall return to the COMPANY on the termination of my employment or on request by the COMPANY all documents and materials belonging to the COMPANY."
Dresser-Rand asserted in its pleadings that the Former Employees all resigned during the first two days of January 2017 and immediately began working for Universal, a direct competitor of Dresser-Rand. Each Former Employee participated in an exit interview and returned all physical property, such as laptops, flash drives, chargers, and company credit cards to Dresser-Rand.
Citing its concern over the Former Employees' resigning "with essentially no notice," Dresser-Rand retained Lance Sloves, a forensic computer analyst, to inspect the Former Employees' computers that had been returned to Dresser-Rand. Dresser-Rand believed, based on results of the forensic inspection, that the Former Employees had retained confidential and trade secret information. Dresser-Rand contacted both the Former Employees and Universal regarding its concerns. After several letters and other communications, negotiations among the parties broke down, and Dresser-Rand filed suit, alleging that "just prior to resigning, the Former Employees used at least eleven (11) portable USB devices (aka "thumb drives" or "external hard drives") and downloaded extensive confidential and proprietary information from Dresser-Rand's database." Dresser-Rand further alleged that the Former Employees "sent emails to personal email addresses that attached confidential and proprietary excel spreadsheets belonging to Dresser-Rand" just before they resigned. Dresser-Rand's petition specifically identified documents and information copied or emailed by each of the Former Employees. Dresser-Rand alleged that it "believes that the Former Employees have since attempted or are attempting to use this stolen information to compete on bids and other business on behalf of [Universal], the new employer."
Dresser-Rand specifically alleged that the "Former Employees misappropriated the information to obtain a competitive advantage as both [Universal] and Dresser-Rand are calling on the same clients to offer field service and repairs for rotating equipment." Dresser-Rand further alleged that "the Former Employees began meeting with Dresser-Rand's clients that they had previously served while at Dresser-Rand the same week they resigned from Dresser-Rand, and have continued to meet with Dresser-Rand clients weekly" and that they disclosed confidential information and "intentionally misled clients with false information." Dresser-Rand asserted that *352 Universal "assisted" the Former Employees in misappropriating the trade secrets.
Dresser-Rand asserted a breach of contract claim for damages against the Former Employees for violating the terms of the Employment Agreement, and it also sought temporary and permanent injunctive relief. It alleged that the Former Employees misappropriated trade secrets, and Universal "knows or has reason to know that the trade secrets were acquired by improper means," and thus they violated Texas common law, the Texas Uniform Trade Secrets Act, and the federal Defend Trade Secrets Act. Dresser-Rand further asserted that "[b]y accessing and sending sensitive, confidential and proprietary information to a personal USB device or personal email address knowing that they were leaving Dresser-Rand and planning to compete against Dresser-Rand, the Former Employees knowingly and with intent to defraud" accessed Dresser-Rand's confidential information without authorization, in violation of the federal Computer Fraud and Abuse Act. Finally, Dresser-Rand alleged that both the Former Employees and Universal had engaged in conversion of the confidential information and had violated the Texas Theft Liability Act.
The parties entered into an agreed permanent injunction, agreeing that neither the Former Employees nor Universal would access or disclose any documents or other information obtained from Dresser-Rand and that they would not destroy, conceal, or dispose of any documents, items, or data compilations stored electronically and belonging to Dresser-Rand. Dresser-Rand likewise agreed not to access any electronic storage devices or computers belonging to the Former Employees or Universal and not to destroy any such devices or documentation.
Universal then answered with a general denial, and the Former Employees likewise denied Dresser-Rand's claims against them, asserted affirmative defenses, and asserted their own counter-claims against Dresser-Rand, including asserting that Dresser-Rand's misappropriation of trade secrets claim was brought in bad faith and that Dresser-Rand violated provisions of the Texas Penal Code and the federal Stored Communications Act by accessing one or more of the employees' private email accounts without authorization.
The Former Employees asserted that Dresser-Rand filed its suit as part of a "pattern and practice of threatening key employees who dare to seek or obtain employment elsewhere with financially ruinous litigation," and that the present litigation started only after Dresser-Rand executives contacted Fox to ask him and "his team" to come back to work for Dresser-Rand and were refused. The Former Employees also challenged numerous factual assertions made by Dresser-Rand in its pleadings. They asserted that they routinely used storage devices and sent emails from their Dresser-Rand computers during the normal course of their work for Dresser-Rand and that such actions were not undertaken solely in the month of December before they left to work for Universal. They also challenged Dresser-Rand's assertions regarding the value of some of the allegedly-misappropriated documents, arguing that certain sales information and customer contacts had a "shelf-life" that limited their utility. Finally, they asserted that Dresser-Rand knew before it filed suit that the Former Employees had voluntarily destroyed any electronic storage devices that they had used during their employment with Dresser-Rand when they first began working for Universal.
Universal and the Former Employees also moved to dismiss Dresser-Rand's suit pursuant to the TCPA and sought attorney's *353 fees and costs. The TCPA dismissal motions asserted that Dresser-Rand's legal action was based on, related to, or was in response to their exercise of their rights of free speech and free association.
Dresser-Rand argued that the commercial speech exemption-set out in Civil Practice and Remedies Code section 27.010(b) -applied, that it had met its burden to present prima facie evidence for each element of every one of its causes of action, and that the motions to dismiss under the TCPA were frivolous. Dresser-Rand attached the unsworn declaration of Sloves, in which he stated that he had conducted a forensic examination of computers Dresser-Rand had provided to the Former Employees, and that all four Former Employees downloaded confidential and proprietary information during December 2016 at the same time they were receiving employment offers from Universal. Dresser-Rand also provided the affidavit of William Swan, its Vice President of North American Sales. He averred that Universal was a direct competitor of Dresser-Rand's and that the Former Employees had worked for Dresser-Rand and were allowed access to confidential and proprietary information pursuant to that employment. Swan averred that Dresser-Rand "undertakes extensive efforts to protect its confidential and proprietary information," including limiting each employee's access to information "about current and prospective clients within their respective areas of responsibility" and using password protection and computer system records of employees' accessing confidential information.
Swan averred that each of the Former Employees was required to, and did in fact, execute an Employment Agreement Relating to Intellectual Property, in which each agreed to protect the secrecy and value of Dresser-Rand's proprietary and confidential information. Swan stated that the Former Employees resigned from Dresser-Rand in January 2017 without providing prior notice of their resignation. Because of "the company's concern regarding the circumstances of [the Former Employees'] departure, an independent forensic inspection was conducted on their work laptops." Swan identified the results of the forensic inspection as revealing that the Former Employees were "filling out direct deposit information for [Universal]" in mid-December 2016 but continued working for Dresser-Rand "without disclosing this conflict of interest or providing notice of their resignation."
Swan further identified some of the information and trade secret documents that were downloaded by the Former Employees, as discovered in the forensic examination of their Dresser-Rand work computers. He stated that each of them accessed and downloaded trade secrets or other confidential information "on multiple occasions in December 2016, after the group began the process of accepting offers at [Universal]." Swan provided the following statements regarding the information accessed or copied by each Former Employee:
20. Fox downloaded the contents of his work laptop's email to a USB device prior to returning his work laptop. He also downloaded over 263 pages regarding a confidential prospective bid with Equistar worth over $4 million in revenue. Shortly after the four individuals left, [Universal] became a competitive bidder on this same contract. While Dresser-Rand eventually won the bid, it lost out on over $500,000 in revenue.
21. Fuller downloaded the contents of his work laptop's email to a USB device prior to returning his work laptop. He also emailed his personal email address a copy of confidential client information *354 detailing millions of dollars of potential business. See December 9, 2016 email from Adam Fuller to Adam Fuller, attached as Exhibit A [to Swan's affidavit].
22. Hunt used five USB devices on his laptop during his last month at Dresser-Rand. He downloaded Dresser-Rand confidential and proprietary strategic planning documents to at least one of the USB devices during that time.
23. Riley emailed a Dresser-Rand confidential and proprietary strategic planning document to his wife's personal email account in his last month at Dresser-Rand. See December 2, 2016 [e]mail from Timothy Riley to [a Verizon email account], attached as Exhibit B. He also accessed multiple reports detailing tens of millions of dollars of prospective business in his last two weeks at Dresser-Rand. Given his imminent exit from Dresser-Rand, these reports were not applicable to his job responsibilities at Dresser-Rand at the time he opened them.
Swan further stated that the Former Employees' "work emails contain nearly all of the documents one would need to be highly successful in this industry," including "contact lists, ... Dresser-Rand['s] annual and monthly business plans, field service proposals and price make ups regarding past and ongoing bids, and current and prospective client databases."
Swan also provided an estimate of the value of some of the information downloaded by the Former Employees and the potential loss to Dresser-Rand because of the Former Employees' alleged misappropriation. He averred that both the "confidential prospective opportunities databases" and the "confidential 'Fleet' databases of current and past jobs" identify projects worth more than $100 million in revenue. Swan stated that Universal "would not have this information but for the four [Former Employees'] theft." He further stated that "Dresser-Rand is currently in the process of bidding against [Universal] for several major projects in the Mid-Atlantic region," which was the same sales area where the Former Employees worked during their employment at Dresser-Rand. Finally, Swan averred:
Fox, Fuller, Hunt, and Riley began meeting with Dresser-Rand's clients that they had previously served while at Dresser-Rand the same week they resigned form Dresser-Rand, and have continued to meet with Dresser-Rand clients weekly. During these calls and meetings with Dresser-Rand's current and prospective clients, these individuals have disclosed confidential Dresser-Rand information, as well as intentionally misled clients by providing false information. As a result of these disclosures, both true and untrue, Dresser-Rand has already suffered millions of dollars in damages.
Dresser-Rand also argued that it first contacted the Former Employees and Universal regarding its confidentiality concerns on January 17, 2017, but, in March 13, 2017, it received a letter from the attorneys for the Former Employees stating that they had already destroyed the electronic storage devices in question. Thus, Dresser-Rand argued that they had spoliated evidence, entitling Dresser-Rand to a presumption that the evidence was harmful to the Former Employees and Universal.
The trial court denied Universal's motion to dismiss pursuant to the TCPA, and the Former Employees' motions were denied by operation of law. Universal and the Former Employees requested findings of fact and conclusions of law, which the trial court signed. The trial court concluded that the TCPA did not apply to Dresser-Rand's *355 lawsuit because it "does not implicate [the Former Employees' and Universal's] right of free speech or free association." The trial court also determined that Dresser-Rand's claims were exempt from the TCPA under the commercial speech exemption and that Dresser-Rand offered competent prima facie evidence in support of each element of its claims. Specifically, the trial court found with regard to Dresser-Rand's prima facie case:
The fact that the Former Employees of Dresser-Rand and current employees of [Universal] destroyed the key evidence of this case intentionally, namely the electronic storage devices, is spoliation. Texas courts have routinely found that the intentional spoliation of evidence raises a presumption that the evidence was unfavorable to the spoliator. Brewer v. Dowling , 862 S.W.2d 156, 159 (Tex. App.-Fort Worth 1993, writ denied). This presumption against [Universal] along with the Sloves Declaration and the Swan Affidavit contain the competent evidence necessary in support of a prima facie case for [Dresser-Rand's] claims of breach of contract, misappropriation of trade secrets, violation of 18 USC § 1836 [of the federal Defend Trade Secrets Act]; violation of 18 USC § 1030(a)(4) [of the federal Computer Fraud and Abuse Act], conversion, and violation of the Texas Theft Liability Act.
This appeal followed. See TEX. CIV. PRAC. & REM. CODE ANN . § 51.014(a)(12) (West Supp. 2018) (providing for appeal from interlocutory order denying motion to dismiss under TCPA).
TCPA Motions to Dismiss
Both Universal and the Former Employees assert that the trial court erred in denying their motions to dismiss pursuant to the TCPA.
A. Standard of Review
We review de novo the denial of a TCPA motion to dismiss. Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc. , 441 S.W.3d 345, 353 (Tex. App.-Houston [1st Dist.] 2013, pet. denied) ; see also Dolcefino v. Cypress Creek EMS , 540 S.W.3d 194, 199 (Tex. App.-Houston [1st Dist.] 2017, no pet.) (applying de novo standard to motion to dismiss denied by operation of law) (citing Avila v. Larrea , 394 S.W.3d 646, 652-53, 656 (Tex. App.-Dallas 2012, pet. denied) ). In determining whether to grant or deny a motion to dismiss, the court must consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE ANN . § 27.006(a) (West 2015). We view the evidence in the light most favorable to the nonmovant. Dolcefino , 540 S.W.3d at 199 ; see Cheniere Energy, Inc. v. Lotfi , 449 S.W.3d 210, 214 (Tex. App.-Houston [1st Dist.] 2014, no pet.).
Our resolution of this case also raises issues of statutory construction, which we review de novo. See ExxonMobil Pipeline Co. v. Coleman , 512 S.W.3d 895, 899 (Tex. 2017) (per curiam); Lippincott v. Whisenhunt , 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). "Our objective in construing a statute is to give effect to the Legislature's intent, which requires us to first look to the statute's plain language." Coleman , 512 S.W.3d at 899 (quoting Lippincott , 462 S.W.3d at 509 ). "[L]egislative intent derives from an act as a whole rather than from isolated portions of it." Youngkin v. Hines , 546 S.W.3d 675, 680 (Tex. 2018). We must "presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." Lippincott , 462 S.W.3d at 509 ; see Coleman , 512 S.W.3d at 899 ;
*356 Tex. Lottery Comm'n v. First State Bank of DeQueen , 325 S.W.3d 628, 635 (Tex. 2010) ("We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind.").
We must interpret the statute according to its plain meaning if its language is unambiguous, unless that interpretation would lead to absurd results. City of Rockwall v. Hughes , 246 S.W.3d 621, 625-26 (Tex. 2008) ; Coleman , 512 S.W.3d at 899 ; see also Tex. Lottery Comm'n , 325 S.W.3d at 635 ("We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results."). Finally, "[w]e presume the Legislature intended a just and reasonable result by enacting the statute." City of Rockwall , 246 S.W.3d at 626 (citing TEX. GOV'T CODE ANN . § 311.021(3) (West 2013) ).
B. TCPA Statutory Scheme
The stated purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN . § 27.002 (West 2015). The Act further expressly provides, "This chapter shall be construed liberally to effectuate its purpose and intent fully." Id. § 27.011(b) (West 2015).
Material here, the TCPA provides, "If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." Id. § 27.003 (West 2015). The Act defines "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." Id. § 27.001(6) (West 2015). It further defines "exercise of the right of association" to mean "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests," and it defines "exercise of the right of free speech" to mean "a communication made in connection with a matter of public concern." Id. § 27.001(2), (3). The TCPA defines "communication" as including "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." Id. § 27.001(1). And it defines "matter of public concern" as including "an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." Id. § 27.001(7).
The TCPA further states:
(b) Except as provided by Subsection (c), on the motion of a party under Section 27.003, a court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of:
(1) the right of free speech;
(2) the right to petition; or
(3) the right of association.
(c) The court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question.
(d) Notwithstanding the provisions of Subsection (c), the court shall dismiss a legal action against the moving party if *357 the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim.
Id. § 27.005 (West 2015).
Texas courts have reinforced the plain language of the statute, holding that the TCPA is designed to balance constitutional interests in protecting rights, such as the freedom to comment on matters of public concern, with accountability for abusing those privileges. See D Magazine Partners, L.P. v. Rosenthal , 529 S.W.3d 429, 433-34 (Tex. 2017) ; see also Coleman , 512 S.W.3d at 898 (recognizing that stated purpose of TCPA is "to 'encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury' ") (quoting TEX. CIV. PRAC. & REM. CODE ANN . § 27.002 ); Hersh v. Tatum , 526 S.W.3d 462, 466 (Tex. 2017) (same).
The TCPA "protects citizens ... from retaliatory lawsuits that seek to intimidate or silence them" from exercising their First Amendment freedoms and provides a procedure for the "expedited dismissal of such suits." In re Lipsky , 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding); Epperson v. Mueller , No. 01-15-00231-CV, 2016 WL 4253978, at *8 (Tex. App.-Houston [1st Dist.] Aug. 11, 2016, no pet.) (mem. op.). The TCPA is intended to identify and summarily dispose of lawsuits "designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." In re Lipsky , 460 S.W.3d at 589 ; Epperson , 2016 WL 4253978, at *8. "But the plain language of the Act merely limits its scope to communications involving a public subject-not communications in public form." Lippincott , 462 S.W.3d at 508 ; see also Adams v. Starside Custom Builders, LLC , 547 S.W.3d 890, 892 (Tex. 2018) (holding that TCPA's definition of "exercise of the right of free speech" is "not fully coextensive with the constitutional free-speech right" protected by United States and Texas Constitutions).
To effectuate the purpose of the Act, the TCPA provides a motion-to-dismiss procedure that allows defendants who claim that a plaintiff has filed a meritless suit in response to the defendant's proper exercise of a constitutionally protected right to seek dismissal of the underlying action, attorneys' fees, and sanctions at an early stage in the litigation. See TEX. CIV. PRAC. & REM. CODE ANN . § 27.003(a) ; Dolcefino , 540 S.W.3d at 198. "The primary means by which the TCPA advances its purpose is ... an expedited dismissal mechanism tied to a burden-shifting analysis 'through which a litigant may require, by motion, a threshold testing of the merits of legal [actions] that are deemed to implicate the express interests protected by the statute.' " Elite Auto Body LLC v. Autocraft Bodywerks, Inc. , 520 S.W.3d 191, 201 (Tex. App.-Austin 2017, pet. dism'd) (quoting Serafine v. Blunt , 466 S.W.3d 352, 369 (Tex. App.-Austin 2015, no pet.) (Pemberton, J., concurring) ).
Courts use a "two-step procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of these First Amendment rights." Coleman , 512 S.W.3d at 898 (citing TEX. CIV. PRAC. & REM. CODE ANN § 27.003 and In re Lipsky , 460 S.W.3d at 586 ); Dolcefino , 540 S.W.3d at 198.
First, the defendant moving for dismissal of a suit pursuant to the TCPA on the ground that the plaintiff's suit was brought against him "to intimidate or to silence [his] exercise of ... First Amendment rights" must show by a preponderance *358 of the evidence that the suit he is seeking to dismiss "is based on, relates to, or is in response to the [movant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." Coleman , 512 S.W.3d at 898 ; Dolcefino , 540 S.W.3d at 198 ; see TEX. CIV. PRAC. & REM. CODE ANN . § 27.005(b).
If the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the moving party's exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association, the "court shall dismiss the legal action" unless "the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN . § 27.005(b), (c). Thus, the burden shifts to the plaintiff resisting the TCPA dismissal to establish a prima facie case for the claim in question. Id. ; see Coleman , 512 S.W.3d at 899 ; Dolcefino , 540 S.W.3d at 199. "If the defendant's constitutional rights are implicated and the plaintiff has not met the required showing of a prima facie case, the trial court must dismiss the plaintiff's claim." Epperson , 2016 WL 4253978, at *9 ; see TEX. CIV. PRAC. & REM. CODE ANN . § 27.005(b).
The court must be mindful that the stated purpose of the TCPA is dual: "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law" and also to "protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN . § 27.002 ; Coleman , 512 S.W.3d at 898. Thus, the court must first ascertain that the rights the defendant claims were constitutional rights protected by the First Amendment as defined in the statute and that the legal action against the defendant was brought to intimidate or silence his expression of those rights in a matter of public concern. See TEX. CIV. PRAC. & REM. CODE ANN . §§ 27.002, 27.005(b). If the defendant makes this showing by a preponderance of the evidence, the plaintiff must then produce prima facie evidence on every element of his claims against the defendant to avoid dismissal. Id. § 27.005(c).
However, a motion to dismiss under the TCPA is manifestly not intended as a means of disposing of meritorious suits on a quick, summary proceeding before evidence can be gathered and the merits developed in that the TCPA is also designed to protect the rights of the plaintiff to file a meritorious lawsuit. See TEX. CIV. PRAC. & REM. CODE ANN . § 27.002 ; Coleman , 512 S.W.3d at 898. It is particularly notable in this regard that the TCPA requires that "[t]he court must rule on a motion [to dismiss under the TCPA] not later than the 30th day following the date of the hearing on the motion." TEX. CIV. PRAC. & REM. CODE ANN . § 27.005(a).
C. Prima Facie Showing
Dresser-Rand argues, inter alia, that Universal and the Former Employees' motions to dismiss were properly denied because the record demonstrates that Dresser-Rand showed by clear and specific evidence a prima facie case for each essential element of each of its claims. See id. § 27.005(b), (c) ; Coleman , 512 S.W.3d at 899 ; Dolcefino , 540 S.W.3d at 199.
1. Standard for clear and specific evidence
Under the TCPA, "[t]he court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." See *359 TEX. CIV. PRAC. & REM. CODE ANN . § 27.005(c). Although the TCPA does not define the phrase "clear and specific evidence," the supreme court has held that the standard requires more than mere notice pleadings and that the plaintiff "must provide enough detail to show the factual basis for its claim." D Magazine Partners , 529 S.W.3d at 434 ; In re Lipsky , 460 S.W.3d at 591. A "prima facie case" refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted; stated another way, it is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." In re Lipsky , 460 S.W.3d at 590 (quoting In re E.I. DuPont de Nemours & Co. , 136 S.W.3d 218, 223 (Tex. 2004) (per curiam) ).
When considering the motion to dismiss, the court considers both the pleadings and any supporting and opposing affidavits. TEX. CIV. PRAC. & REM. CODE ANN . § 27.006(a) ; D Magazine Partners , 529 S.W.3d at 434. The supreme court has expressly disapproved interpretations of the TCPA that "require direct evidence of each essential element of the underlying claim to avoid dismissal," and instead it has held that pleadings and evidence that establish the facts necessary to support the essential elements of a claim are sufficient to resist a TCPA motion to dismiss. In re Lipsky , 460 S.W.3d at 590-91. The TCPA requires only that evidence be "clear," "specific," and "sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." Id. at 590 ; Schlumberger, Ltd. v. Rutherford , 472 S.W.3d 881, 894 (Tex. App.-Houston [1st Dist.] 2015, no pet.) (holding same).
2. Breach of contract
"To prevail on a breach of contract claim, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach." West v. Triple B Servs., LLP , 264 S.W.3d 440, 446 (Tex. App.-Houston [14th Dist.] 2008, no pet.).
Dresser-Rand presented evidence of the existence of valid contracts with each of the Former Employees. In his affidavit, Swan averred that all of the Former Employees entered into an "Employment Agreement Relating to Intellectual Property" and that Dresser-Rand required its personnel to execute the contract "as a condition of employment" in an "effort to protect the secrecy and value of its proprietary and confidential information and key assets." Dresser-Rand also supplied the actual agreements signed by Fox, Hunt, and Fuller. Swan's affidavit and other portions of the record demonstrate that Dresser-Rand employed the Former Employees for several years and provided them access to the confidential information, thereby tendering performance.
Regarding breach, both Swan's affidavit and Sloves's declaration set out facts relevant to establish a prima facie case that the Former Employees breached their employment contracts by copying confidential information to USB devices or emailing certain confidential information immediately prior to resigning from Dresser-Rand. See Case Corp. v. Hi-Class Bus. Sys. of Am., Inc. , 184 S.W.3d 760, 769-70 (Tex. App.-Dallas 2005, pet. denied) ("A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform.").
Finally, Dresser-Rand presented evidence, in the form of Swan's affidavit, that Dresser-Rand's trade secrets were extremely valuable and that Dresser-Rand *360 had suffered and would continue to suffer harm in the form of lost revenue and increased competition on bids as a result of the Former Employees' actions. Thus, we conclude that the record is sufficient to establish a prima facie case on the breach of contract claim. See Schlumberger Ltd. , 472 S.W.3d at 893-94 (analyzing prima facie evidence supporting breach of contract claim, considering affidavit of forensic expert and corporate representative detailing data that was improperly used by defendant).
The Former Employees and Universal argue that the Swan affidavit does not provide clear and specific allegations that any confidential information or trade secrets were disclosed to third parties and that the record does not provide details such as "the facts of when, where, and what was said" and so on. This argument, focusing on what is missing from Swan's affidavit, ignores the evidence that is contained in the record-i.e., the statements in Swan's affidavit and Sloves's declaration identifying specific information that the Former Employees accessed after they accepted work with Universal but before departing Dresser-Rand and Swan's affidavit testimony of the significance of the information and the harm to Dresser-Rand.
Furthermore, the fact that some of the representations set out in Swan's affidavit and in the other evidence are contested or that the Former Employees may construe the same facts and events differently is not relevant to determining whether Dresser-Rand presented a prima facie case on each element of its breach of contract claims. Dresser-Rand need not conclusively prove its claims at this stage of the litigation; instead, it must provide the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." See In re Lipsky , 460 S.W.3d at 590 (holding that TCPA requires only that evidence be "clear," "specific," and "sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted ") (emphasis added); Schlumberger Ltd. , 472 S.W.3d at 894 (holding same).
We hold that Dresser-Rand met its burden of making a prima facie case on its breach of contract claims.
3. Misappropriation of trade secrets and violation of the Defend Trade Secrets Act
To establish misappropriation of trade secrets under Texas law, a plaintiff must show the existence of a trade secret that the defendant acquired through a breach of a confidential relationship or through other improper means and that the secret was used without authorization, resulting in damages to the plaintiff. Trilogy Software, Inc. v. Callidus Software, Inc. , 143 S.W.3d 452, 463 (Tex. App.-Austin 2004, pet. denied) ; see also TEX. CIV. PRAC. & REM. CODE ANN . §§ 134A.003 -.004 (West Supp. 2018) (providing for injunctive relief and damages for misappropriation of trade secrets).
Likewise, the federal Defend Trade Secrets Act provides a cause of action to "[a]n owner of a trade secret that is misappropriated ... if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The federal act defines misappropriation as including the "disclosure or use of a trade secret of another without express or implied consent by a person who ... used improper means to acquire knowledge of the trade secret." Id. § 1839(5)(B)(i). "[T]he term 'improper means' ... includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means[.]" Id. § 1839(6)(A).
*361 Dresser-Rand presented evidence, in the form of Swan's affidavit, that Dresser-Rand had trade secrets including "contact lists, ... Dresser-Rand['s] annual and monthly business plans, field service proposals and price make ups regarding past and ongoing bids, and current and prospective client databases." Swan specifically identified two databases-the "confidential prospective opportunities databases" and the "confidential 'Fleet' databases of current and past jobs"-as valuable proprietary information. Dresser-Rand further provided evidence, through Swan's affidavit and Sloves's declaration, that the Former Employees accessed and copied the trade secrets while they were receiving and accepting job offers from Universal, providing at least some evidence that they obtained the trade secrets through breach of a confidential relationship or through other improper means. Swan's affidavit set out the alleged actions of each individual Former Employee and Sloves identified specific documents and devices used by each Former Employee.
Swan also averred that immediately after the Former Employees' departure to Universal, Universal competed with Dresser-Rand on particular bids. He stated that the Former Employees were not authorized to use the confidential information in the way that they did-i.e., continuing to access Dresser-Rand's trade secrets when they knew that their departure was imminent and copying certain protected information immediately prior to their departure. Swan likewise provided affidavit testimony that the information was useful to compete against Dresser-Rand in the "Mid-Atlantic" region, an interstate region. See 18 U.S.C. § 1836(b)(1). And Swan averred that the Former Employees' actions resulted in damages to Dresser-Rand because the information misappropriated was worth more than $100 million in future revenue. See TMRJ Holdings, Inc. v. Inhance Techs., LLC , 540 S.W.3d 202, 209 (Tex. App.-Houston [1st Dist.] 2018, no pet.) (holding that value of plaintiff's lost profits and development costs avoided by defendant as result of misappropriation, among other measures, are valid forms of relief for misappropriation of trade secrets).
The Former Employees and Universal again argue that Dresser-Rand's evidence on this claim is not clear or specific because it fails to show which documents taken constitute trade secrets, how those specific documents were treated and maintained as trade secrets, or what measures Dresser-Rand took to maintain the secrecy of the specific documents. However, both Swan's affidavit and Sloves's declaration identified particular documents and information. Swan stated that Dresser-Rand attempted to keep the information secret, giving the examples that it used password protected computers, limited employee access to the information, and tracked when employees accessed the information. As we stated above, Dresser-Rand need not conclusively prove its claims at this stage of the litigation; the TCPA requires only that evidence be "clear," "specific," and "sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. " See In re Lipsky , 460 S.W.3d at 590 (emphasis added).
We hold that Dresser-Rand met its burden of making a prima facie case on its state and federal misappropriation of trade secrets claims.
4. Violations of federal Computer Fraud and Abuse Act
Dresser-Rand alleged that the Former Employees knowingly and with the intent to defraud Dresser-Rand accessed protected computers, in violation of the federal Computer Fraud and Abuse *362 Act (CFAA). See 18 U.S.C. § 1030(a)(4). The CFAA provides a federal cause of action against someone who
knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period.
Id. It further provides a cause of action against someone who "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer," who "intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage," or who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss." Id. § 1030(a)(5).
Regarding the element that the Former Employees acted knowingly and with the intent to defraud, Dresser-Rand points to the timing of the Former Employees' accessing and copying confidential information. Swan's affidavit stated that the Former Employees resigned from Dresser-Rand in January 2017 without providing prior notice of their resignation. The forensic inspection revealed that the Former Employees were "filling out direct deposit information for [Universal]" in mid December 2016 but continued working for Dresser-Rand "without disclosing this conflict of interest or providing notice of their resignation." He stated that each of them accessed and downloaded trade secrets or other confidential information "on multiple occasions in December 2016, after the group began the process of accepting offers at [Universal]." Both Swan's affidavit and Sloves's declaration identified particular information and files accessed or copied by each Former Employee.
Swan's affidavit also addresses the element of unauthorized access of a protected computer. As discussed above, Swan averred that Dresser-Rand "undertakes extensive efforts to protect its confidential and proprietary information," including by limiting each employee's access to information "about current and prospective clients within their respective areas of responsibility" and by using password protection and computer system records of when employees access confidential information. It also required the Former Employees to execute an Employment Agreement Relating to Intellectual Property, in which they agreed to protect the secrecy and value of Dresser-Rand's proprietary and confidential information. Swan's affidavit demonstrates that by continuing to access confidential information without disclosing their impending departure to a direct competitor they exceeded their authorization to use Dresser-Rand's proprietary information. Finally, Swan's affidavit addressed the value of the information that was allegedly compromised by the Former Employees and the nature of Dresser-Rand's damages, including lost revenue and loss of the value of trade secrets and other confidential information.
We conclude that Dresser-Rand met its burden of making a prima facie case on its claim for violations of the CFAA.
5. Conversion and violation of Texas Theft Liability Act
Finally, Dresser-Rand asserted a cause of action for conversion against the Former Employees and Universal, and it alleged violations of the Texas Theft Liability Act. Conversion is the unauthorized *363 and unlawful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. Freezia v. IS Storage Venture, LLC , 474 S.W.3d 379, 386 (Tex. App.-Houston [14th Dist.] 2015, no pet.) (citing Waisath v. Lack's Stores, Inc. , 474 S.W.2d 444, 446 (Tex. 1971) ). The elements of a conversion claim are: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. Id. at 386-87 ; Stroud Prod., L.L.C. v. Hosford , 405 S.W.3d 794, 811 (Tex. App.-Houston [1st Dist.] 2013, pet. denied) (citing Khorshid, Inc. v. Christian , 257 S.W.3d 748, 759 (Tex. App.-Dallas 2008, no pet.) ). "Generally, the measure of damages for conversion is the fair market value of the property at the time and place of the conversion." United Mobile Networks, L.P. v. Deaton , 939 S.W.2d 146, 147-48 (Tex. 1997) (per curiam).
Under the Texas Theft Liability Act, a person who commits theft, which includes the unlawful appropriation of property under Penal Code section 31.03, is liable for the damages resulting from the theft. See TEX. CIV. PRAC. & REM. CODE ANN . § 134.002 (West Supp. 2018), § 134.003 (West 2011). A person commits theft when he unlawfully appropriates property with the intent to deprive the owner of that property. TEX. PENAL CODE ANN . § 31.03(a) (West Supp. 2018).
The same evidence outlined above provides prima facie proof of Dresser-Rand's conversion and Theft Liability Act claims. Dresser-Rand alleged, and Swan's affidavit provided some evidence, that the Former Employees and Universal "unlawfully assumed possession of and exercised dominion and control over the personal property of Dresser-Rand in a manner inconsistent with Dresser-Rand's rights" by "downloading documents to personal USB devices and sending documents to personal email addresses." Swan averred that Dresser-Rand was the owner of the computers and other proprietary files accessed and used by the Former Employees for the benefit of their new employer, Universal. Swan's affidavit and Sloves's declaration identified some specific circumstances surrounding these allegations and identified particular sets of data or trade secrets that were allegedly compromised. Furthermore, correspondence between Dresser-Rand and its Former Employees and among lawyers for all parties indicates that Dresser-Rand had expressed concern regarding its trade secrets, that it asked for the Former Employees to return their computers and other Dresser-Rand property, and that the employees copied or otherwise retained certain files and other valuable information.
We conclude that Dresser-Rand met its burden of making a prima facie case on its claims for conversion and for violations of the Theft Liability Act.[1]
*364 Because Dresser-Rand established by clear and specific evidence a prima facie case for each essential element of each of its claims, the trial court correctly denied Universal's and the Former Employees' TCPA motion to dismiss. See TEX. CIV. PRAC. & REM. CODE ANN . § 27.005(c).
Conclusion
We affirm the trial court's order denying Universal's motion to dismiss and the denial by operation of law of the Former Employees' motion to dismiss pursuant to the TCPA.

Because of our holding that Dresser-Rand met its burden of making a prima facie showing on each of its claims, we need not address the remainder of the parties' issues, including Dresser-Rand's argument that the commercial speech exemption set out in Civil Practice and Remedies Code section 27.010(b) applies to its claims. See Tex. Civ. Prac. & Rem. Code Ann § 27.005(c) ; ExxonMobil Pipeline Co. v. Coleman , 512 S.W.3d 895, 898 (Tex. 2017). Furthermore, because we conclude that Dresser-Rand met its prima facie burden without regard to the trial court's spoliation finding, we need not address the parties claims on that issue. See Tex. R. App. P . 47.1.