**Opinion issued January 16, 2020**



In The

# Court of Appeals

### For The

## First District of Texas

———————————

## NO. 01-19-00059-CV

———————————

## RICH ROBINS, Appellant

## V.

## AUSTEN PERRY CLINKENBEARD AND JONATHON G. CLINKENBEARD A/K/A JON CLINKENBEARD, Appellees

---

**On Appeal from the County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Case No. 1107951**

---

## MEMORANDUM OPINION

Rich Robins appeals the denial of his motion, filed pursuant to the Texas Citizen's Participation Act (TCPA),[1] to dismiss Austen Perry Clinkenbeard and

---

[1] We note that, in its most recent session, the Texas Legislature amended the TCPA. The amendments became effective September 1, 2019. Because this suit was filed

Jonathon G. Clinkenbeard's professional malpractice case against him.[2] In three issues, Robins argues that the trial court erred in denying his motion because (1) the Clinkenbeards' claims are based on, related to, or in response to TCPA-protected communications; (2) the Clinkenbeards failed to come forward with sufficient evidence to establish a prima facie case to support their claims; and (3) Robins established defenses to the Clinkenbeards' claims.

We affirm.

### Background

We recently affirmed the order of the 61st Harris County District Court denying Robins's TCPA motion to dismiss the Commission for Lawyer Discipline's professional misconduct case against him. *See Robins v. Commission for Lawyer Discipline*, No. 01-19-00011-CV, 2020 WL 101921 (Tex. App.—Houston [1st Dist.] Jan. 9, 2020, no pet. h.). Because the factual allegations in that case are the same as in this case, we will provide an abridged background here.

---

before the effective date of the amendments, it is governed by the statute as it existed before the amendments, and all of our citations and analysis are to the TCPA as it existed prior to September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–12, 2019 Tex. Sess. Law Serv. 684, 684–87(codified at TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011).

[2]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008(b) (authorizing interlocutory appeal of order denying motion to dismiss filed under TCPA section 27.003).

2

**The Crisp Lawsuit**

In July 2012, Cindy Crisp, who suffered from multiple sclerosis, sold certain items of personal property to estate liquidator John Sauls for a total price of $6,893.21. Sauls sent Crisp payment in the form of two checks, both of which bounced.

By handwritten letter dated October 3, 2013, Crisp asked attorney Robins to help her recover "the value of checks plus interest and attorney/court costs" from Sauls, and she stated that she "understands the attorney fees will not be of normal value and that Rich Robins is doing this to help her to honor the checks that were written NSF and fees and costs."

Over the course of the following year and a half, Crisp's health further declined and Robins fell out of contact with her. Nevertheless, Robins filed suit on behalf of Crisp to collect payment from Sauls for the bounced checks, "thinking that [Crisp was] hopefully still alive somewhere, albeit in a potentially very compromised state of health." The petition, filed on November 17, 2016, stated that Crisp "would diplomatically settle this case through her legal counsel for $14,338 if no further wrangling is necessary to finally conclude this unfortunate matter."

In early 2017, Sauls's attorney, Kurt Noell, offered to settle the case for the amount of the debt. Robins rejected the offer, sticking to the demand stated in the

3

petition. Noell then made a second offer, for the amount of the debt plus $2,500 for loss of use and attorney's fees, but Robins rejected that offer also.

In March 2017, Crisp's two sons, Austen and Jon Clinkenbeard, informed Robins that their mother had died in 2015. Around the same time, Noell served discovery on Robins. According to Noell, he had a conversation with Robins during which Robins discussed potential dates for Crisp's deposition—all the while knowing that Crisp had been deceased for over two years but failing to disclose this information to Noell. When Robins failed to respond to Noell's written discovery requests, Noell filed a motion for sanctions and set it for hearing.

Trial of the case was set for April 3, 2017, but Robins failed to appear, and the trial court dismissed the case for want of prosecution. Robins filed "Plaintiff Cindy Crisp's Verified Motion to Reinstate," claiming he was unaware of the setting, and the trial court granted the motion, which, notably, did not mention that Crisp had died over two years earlier.

Two days before the June 29, 2017 sanctions hearing was to occur, Robins emailed the court administrator to inform her that Crisp "is reportedly no longer with us . . . . whether opposing counsel knows it or not" and that "her son wants to fill in for her." The email did not indicate that Crisp had been dead for years.

It appears from the record that, in response to the suggestion of Crisp's death, the trial court cancelled the June 29 hearing and instead held a telephonic

4

hearing, during which Robins "represented that Cindy Crisp was probably dead." The trial court directed Robins to produce proof of Crisp's death.

Several things happened as a result of the telephonic hearing. On July 4, 2017, Robins obtained from Austen Clinkenbeard a signed retainer agreement, purporting to authorize Robins to represent Crisp through Austen and providing that Robins's fees would be paid by Sauls. Noell demanded that Robins produce, in addition to Crisp's death certificate, any evidence showing whether her estate had been probated.

Robins subsequently obtained Crisp's death certificate and emailed it to Noell on July 28, but he did not provide evidence regarding probate. As a result, Noell filed a motion to show authority pursuant to Texas Rule of Civil Procedure 12. *See* TEX. R. CIV. P. 12 (stating that party may file motion to require challenged attorney to appear before trial court to show authority to act on behalf of client). The trial court granted the motion and ordered Robins to appear and show that Crisp had authorized him to file the suit in her name and that "a probate proceeding of some type has been filed so that any interest in her estate could be pursued by an heir." Robins responded, stating that "a probate court has never been involved with Cindy Crisp's passing or with her estate, and one need not be."

On September 18, the trial court held a hearing, at which Robins stated that he had not filed a probate proceeding because he had no experience in probate

5

court and he was trying to save his clients' money. The trial court expressed concern that Robins had filed the lawsuit "with a client that was deceased" and without the authority of her heirs. When the trial court commented that it was "strange" that Robins had only recently informed Noell that Crisp had died two years earlier, Robins stated, "Well, we were trying to keep this within the settlement range because he was almost there." The trial court stated, "It sounds like you were being dishonest with the opposing party," to which Robins responded, "Dishonest as opposed to saying, 'Hey, I think my client is dead.'" Before calling an end to the hearing, the trial court stated to Robins, "[y]ou were dishonest." The trial court then ordered Robins to submit additional briefing regarding his authority to represent Crisp through Austen Clinkenbeard and stated that it would strike Crisp's pleadings if he failed to do so within ten days.

Robins drafted affidavits for both Clinkenbeard brothers stating that probate was not necessary. But the Clinkenbeards refused to sign because the affidavits stated that Crisp had no debt. Robins then filed the supplemental briefing ordered by the trial court. In it, he stated that the case could proceed with Austen Clinkenbeard as plaintiff and—even though the Clinkenbeard brothers had told him that they believed Crisp did have outstanding debt—that no probate proceedings were necessary for Crisp's estate. Robins also amended Crisp's

petition to add the allegation that no probate proceedings were necessary for Crisp's estate.

On October 23, 2017, the trial court signed an order striking Crisp's pleadings and awarding Sauls $250 as sanctions, and on February 12, 2018, it dismissed the case entirely.

**The Aftermath**

Austen filed a grievance against Robins. The State Bar classified the grievance as a "Complaint," and the Commission for Lawyer Discipline filed a petition in district court asking that Robins be reprimanded, suspended, or disbarred.

On January 22, 2018, the Clinkenbeards filed suit against Robins for legal malpractice in Smith County, Texas. Robins was served on or about May 1, 2018.

On March 26, 2018, Robins filed suit against the Clinkenbeards in Harris County, Texas, alleging violations of the Texas Uniform Fraudulent Transfer Act. *See* TEX. BUS. & COM. CODE ANN. §§ 24.001–.013. Specifically, he alleged that Crisp's transfer of her lake house to her sons caused her to become insolvent, "which was done to the detriment of the legal endeavor that [Crisp] initiated with Plaintiff Robins in which she ultimately ceased participation." He further alleged that Crisp "arranged the asset transfer" in a way that made the Clinkenbeards "want to abandon [her] cause of action" that she "very much wanted to have

7

pursued, as did the [Clinkenbeards] until they surprisingly changed their minds, post-transfer."

The Clinkenbeards dismissed the Smith County case, and on September 21, 2018, asserted "the exact same" legal malpractice claim as a counterclaim in Robins's Harris County suit against them. They alleged that Robins engaged in malpractice by:

- providing unreasonable advice, including by stating that he "would not be surprised if the jury awards . . . in excess of $63K" on a $6,893.21 check insufficiency claim;
- putting his own interests ahead of those of his clients, including by creating a situation in which the Clinkenbeards' action "was not in [Robins's] best interest to try to resolve unless and until he was offered attorneys' fees" by Sauls, the defendant in that case;
- asking them to sign a retainer agreement so he could respond to discovery to avoid having to attend a sanctions hearing because he did not "want to have to drive to Tyler" from Houston;
- failing to keep them fully informed "about settlement discussions and the case proceedings";
- attempting to collect and threatening to sue them for his attorney's fees, contrary to the retainer agreement;
- failing to reasonably pursue the case and causing sanctions to be assessed;
- causing the case to be dismissed; and
- refusing to turn over the client file.

The Clinkenbeards further alleged that the case could have been resolved based on Noell's settlement offer that Robins never communicated to them and that the trial court could have been properly notified of Crisp's death and the

8

standing situation could have been resolved, but was not, because of Robins's actions.

***Robins's TCPA Motion to Dismiss***

On November 12, 2018, Robins filed a TCPA motion to dismiss the Clinkenbeards' counterclaim. He argued that the TCPA applies to the malpractice claim because it is based on, related to, or in response to his exercise of the rights of free speech, petition, and association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b) (requiring dismissal of legal action if movant shows by preponderance of evidence that action is based on, relates to, or is in response to movant's exercise of right of free speech, petition, or association). He contended that the malpractice action "impinges on" his "constitutional and other rights under the TCPA" and "is an intentional drain on Plaintiff Robins' time and resources, as well as a bullying maneuver intended to hinder Plaintiff Robins' rights and abilities to otherwise cultivate potentially rewarding associations with the general public." Robins also argued that the Clinkenbeards could not make a prima facie case for legal malpractice and, even if they could do so, that he had established valid defenses to their claim.

***The Clinkenbeards' Prima Facie Case***

In their response, the Clinkenbeards argued that Robins did not file his TCPA motion to dismiss within the 60-day statutory deadline, when counted from

the day he was served in the Smith County case. *See id.* § 27.003(b) (stating that TCPA motion to dismiss "must be filed not later than the 60th day after the date of service of the legal action"). The Clinkenbeards also argued that Robins failed to meet his burden to show by a preponderance of the evidence that the TCPA applies because their malpractice cause of action complains about Robins's misrepresentations to them, not his exercise of First Amendment rights, and the misrepresentations Robins made to them are exempt from the TCPA under the commercial speech exemption. *See id.* § 27.005(b) (stating that court shall dismiss legal action if movant shows by preponderance of evidence that legal action is based on, relates to, or is in response to movant's exercise of right of free speech, petition, or association); *id.* § 27.010(b) (exempting from TCPA legal actions brought against person primarily engaged in business of selling or leasing goods or services if statement or conduct arises out of sale or lease of goods, services, or insurance product, insurance services, or commercial transaction in which intended audience is actual or potential buyer or customer). Finally, they attached evidence which they argued established a prima facie case for each element of their malpractice claim, including Austen's and Jon's affidivits, which themselves attached exhibits including several email conversations they had had with Robins, Noell's affidavit, a transcript of the September 18, 2017 hearing before the trial

10

court in the Crisp case, and the Commission's disciplinary petition filed against Robins.

### The Clinkenbeards' Affidavits

The Clinkenbeards stated in their affidavits that, after they informed Robins of their mother's death, he began urging them to continue with the litigation. In one email, which they attached as an exhibit, Robins remarked, "I want to get you guys the biggest award realistically obtainable, but I need to balance that with how law school's painfully expensive," and he stated that he "still owes considerably more because the greedy feds charge such a high premium for student loans . . . ." And in another email, also attached as an exhibit, Robins stated, "billing Sauls for my several dozen (and growing) hours of attorney time . . . naturally remains a priority for me . . . . The . . . cost of law school helps make that understandable."

A few days before the June 29, 2017 sanctions hearing was to occur, Robins sent an email to the Clinkenbeard brothers asking them to execute retainer agreements so that he could continue the Crisp litigation as their lawyer and stating that he "would not be surprised if the jury awards [them] in excess of $63k" on Crisp's claim against Sauls. In the email, he acknowledged that neither the court nor opposing counsel was aware of Crisp's death, and he stated that if the Clinkenbeards signed the retainer agreements, he might be able to avoid monetary sanctions at the upcoming hearing.

When the Clinkenbeard brothers told Robins that they could not afford to pay "any expenses or fees up-front," Robins assured them that "Mr. Sauls would eventually pay all of that." He continued to advise them not to settle the case and "would press [them] to continue litigation in court." Only after they signed the retainer agreement did Robins tell them that he had received a settlement offer for the full amount of the bounced checks, and only recently—in the course of discovery in the underlying malpractice suit against Robins—did they learn that Noell had made another offer to settle "for the amount of the check plus $2,500," which was "also apparently declined by Mr. Robins without consulting" the Clinkenbeards.

Austen attended the September 18 hearing in the Crisp litigation. That morning, Robins "began panicking because he had not brought the necessary documents and he pleaded that [Austen] print out over a hundred pages of documents at [his] hotel." Robins "appeared to be completely unprepared," and Austen was "bothered" by what he observed at the hearing." Robins "ranted and raved and the judge admonished his behavior several times," and "the judge seemed to be mad at [Robins] about not promptly telling the court that [Crisp] had died in 2015." Austen further observed Robins "say on the record at a hearing in court that he had no probate experience and had only filed the suit in county court

to save money." After the hearing, Austen "realized there might be more going on in the case" than Robins had disclosed.

Robins pressured Austen and Jon to sign the affidavits of heirship stating that no probate proceedings were necessary. They sent an email to Robins declining to sign the affidavits and explaining that Crisp did "have debt to the nursing home she was in at the time of her passing and . . . to medicaid/care." They closed the email by asking Robins for a copy of their client file. But Robins did not comply.

The Clinkenbeard brothers sent Robins another email, stating that they were "not comfortable swearing to such a bold claim" that Crisp had no pending claims against her or any assets. They also expressed concern that the exact date Robins had learned of Crisp's death "was clearly such a sensitive issue with the judge last week," and they stated that they "no longer wish to pursue this matter" on their mother's behalf because, while their "motivations have not changed . . . circumstances and feelings about this case certainly have." The email concluded with another request to see the client file.

Shortly thereafter, Austen and Jon spoke with Robins over the phone about the case generally and the affidavits Robins wanted them to sign. They averred that Robins was "very rude and insulting to us and to our late mother, who he said had been a burden to him and the state." They emailed Robins later that day, stating

13

> I'm very upset with how that call went. Neither Austen or I have ever done anything to impede this trial nor have we claimed we wouldn't help. We simply can't sign the affidavits as-is . . . . I don't think that's any reason for threats and insinuating that our mother was and is a burden to you and the state.

The email also reiterated the brothers' request to see their file.

Robins responded with a scathing email accusing the Clinkenbeard brothers of defrauding and betraying him and threatening to sue them for breach of the retainer agreement. He wrote, "I cannot recall when I last witnessed such a display of solipsistic callousness by two privileged young men such as yourselves." As to their requests to see their file, which he described as harassment, Robins stated that although the brothers were in no position to "further mistreat" him or to "demand repeated compliance," their "questions and requests have been adequately addressed in prior correspondence."

On October 20, 2017, the Clinkenbeard brothers sent Robins an email terminating their relationship and, once again, demanding their file. In it, Austen stated,

> After my assistance and travels to the court in Tyler, and witness of your courtroom performance, after repeated dismissals of conversations for potential settlement options, after repeated disregard for written requests for our case file, and after the deterioration of your communications with us, this matter has become one that we no longer wish to pursue with you.

Robins never sent the file. Instead, he began to demand attorney's fees from the Clinkenbeards, which surprised them "because [Robins] had always said he would get paid his fees from Mr. Sauls."

**Other Evidence of Malpractice**

The Clinkenbeards included Noell's affidavit with their response to Robins's TCPA motion to dismiss. In it, Noell recounted his experiences with Robins over the course of the litigation and stated that he incurred fees in representing Sauls for "engaging in futile settlement negotiations (since Mr. Robins had no client to consult about the settlement); appearing at a futile trial setting in April 2017 (since Mr. Robins had no client); drafting and sending futile discovery requests (that could never be answered or sworn-to by Ms. Crisp); trying to arrange for a futile deposition; and preparing my client's case for trial."

The Clinkenbeards also attached the transcript from the September 18 hearing at which the trial court stated that Robins was "dishonest" for having withheld the fact of Crisp's death from opposing counsel.

Finally, the Clinkenbeards attached the Commission's disciplinary petition, which alleged that Robins "took no immediate action to notify the court or Sauls' counsel of Crisp's death," "never advised [the Clinkenbeards] that there could be a problem with the case because there was no probate case or estate representative," "did not have authority to bring the suit on Crisp's behalf," "did not give the

Clinkenbeards' their file," and "demanded that they pay his attorney's fees and expenses, which was contrary to the retainer agreement." The petition alleged that this conduct violated the Texas Disciplinary Rules of Professional Conduct. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.15(d), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (TEX. STATE BAR R. art. X, § 9) (requiring lawyer to surrender client's "papers and property" to client upon termination of representation); *id.* 3.01 (prohibiting lawyer from filing frivolous case); *id.* 3.02 (prohibiting lawyer from taking position that causes unreasonable increase in costs or delay); *id.* 3.03(a)(2) (stating that lawyer may not "fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act"); *id.* 8.04(a)(3) (prohibiting lawyer from engaging in dishonest, fraudulent, or deceitful conduct or misrepresentations).

In his reply, Robins argued that his TCPA motion to dismiss was timely filed because the 60-day deadline to file began to run on the date the Clinkenbeards filed their counterclaim in the underlying suit, not when they filed their suit against him in Smith County, because the retainer agreement contained a forum selection clause that required them to bring suit in Harris County. He also argued that the Clinkenbeards failed to carry their burden to present clear and specific evidence of a prima facie case for each element of their malpractice claim for several reasons. First, their affidavit evidence was defective because it contained hearsay, was

16

"unsworn under penalty of perjury," and did not "detail [affiants'] criminal records." Second, they failed to provide expert testimony. And third, Robins argued, and included twenty-seven exhibits to show, that (1) he had Crisp's permission to file the suit against Sauls; (2) his "tentative opining" to the Clinkenbeards about "possible financial recoveries from a jury was not malpractice"; (3) he did tell the Clinkenbeards that Crisp's case would be harmed by their "refusal to provide an affidavit of heirship"; (4) he "coped with difficult circumstances" when he appeared at the September 18, 2017 hearing; and (5) the Clinkenbeards were aware of Noell's settlement offers.

On January 14, 2019, after two hearings, the trial court denied Robins's motion to dismiss without stating the grounds upon which it relied. Robins appeals this order.

## Texas Citizen's Participation Act

### A.  *Standard of Review*

We review de novo the denial of a TCPA motion to dismiss. *Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2017, no pet.). In determining whether to grant or deny a TCPA motion to dismiss, the court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). We view the evidence in the light most favorable to the

nonmovant. *Dolcefino*, 540 S.W.3d at 199; *see Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 214 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

## B.  TCPA Statutory Scheme

The TCPA was enacted to safeguard the constitutional rights to petition, speak freely, associate freely, "and otherwise participate in government" from infringement by meritless lawsuits. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. To achieve this purpose, the TCPA provides for dismissal if the movant shows by a preponderance of the evidence that a legal action filed against it is based on, relates to, or is in response to the moving party's exercise of the right of free speech, the right to petition, or the right of association. *Id.* § 27.005(b).

If the movant meets this burden, the trial court must dismiss the action unless the nonmovant establishes by "clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c); *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding) ("In reviewing [a TCPA motion to dismiss], the trial court is directed to dismiss the suit unless 'clear and specific evidence' establishes the plaintiffs' 'prima facie case.'") (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c)).

Once a TCPA nonmovant establishes a prima facie case for its claim, the movant may still obtain a dismissal of the legal action if it "establishes by a

preponderance of the evidence each essential element of a valid defense to the nonmovant's claim."[3] TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d).

## C.     *Timeliness of Motion*

We begin by addressing the Clinkenbeards' contention that the trial court did not err in denying Robins's TCPA motion to dismiss because it was untimely filed.

Absent leave of court for good cause, a TCPA motion to dismiss "must be filed not later than the 60th day after the date of service of the legal action." *Id.* § 27.003(b). The clock for the 60-day filing deadline begins to run "on the date on which [movant] was served with the first pleading alleging a cause of action against [it]." *Bacharach v. Garcia*, 485 S.W.3d 600, 602 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *accord Jordan v. Hall*, 510 S.W.3d 194, 197–98 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

The Clinkenbeards argue that the first pleading in which they asserted their legal malpractice claim against Robins was the petition they filed in their original suit in Smith County, which they later dismissed. They contend that because Robins was served on or about May 1, 2018, in the Smith County suit, he had only until June 30, 2018, to file his TCPA motion to dismiss in this Harris County suit,

---

[3]     The amended TCPA requires dismissal of the underlying suit if the moving party "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–12, 2019 Tex. Sess. Law Serv. 684, 684–87(codified at TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d)).

and his November 12, 2018 filing was therefore untimely. The Clinkenbeards rely on the rule that subsequent filings asserting the same claim do not extend the TCPA deadline. *See Jordan*, 510 S.W.3d at 198 ("[T]he deadline for a TCPA motion is not reset when a plaintiff files an amended petition that adds no new claims and relies upon the same factual allegations underlying an original petition."). They argue that this rule reaches beyond the confines of the case in which the TCPA motion to dismiss is filed, such that the 60-day deadline begins to run on the date a defendant is served in a separate proceeding, including in another case, in another court, in a different county, as long as the claims are the same. We disagree and hold that the deadline for Robins to file his TCPA motion to dismiss was 60 days after he was served in this case, in Harris County. *See Walker v. Hartman*, 516 S.W.3d 71, 79 (Tex. App.—Beaumont 2017, pet. denied) (holding that 60-day deadline for filing TCPA motion to dismiss began to run when movant was served with legal action in state court, not when he was served with earlier-filed case in federal court; "a common nucleus of operative facts" does not make subsequent lawsuit filed in different court "tantamount to the lawsuit previously filed"). Because the Clinkenbeards have not shown that Robins's TCPA motion to dismiss was filed outside the 60-day deadline, we cannot affirm the trial court's denial of the motion on that basis.

## D.  *Prima Facie Case*

In his second issue, Robins argues that the Clinkenbeards failed to carry their burden to establish a prima facie case for legal malpractice by clear and specific evidence because the affidavits they provided are conclusory, contain hearsay, and are otherwise defective; the Commission's petition should not be considered because is not probative of Robins's alleged malpractice; and the Clinkenbeards failed to provide expert testimony.[4]

Under TCPA section 27.005(c), the trial court may not dismiss if the plaintiff establishes "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). In this context, the Texas Supreme Court has clarified that "clear" means "'unambiguous,' 'sure,' or 'free from doubt'" and "specific" means "'explicit' or 'relating to a particular named thing.'" *See In re Lipsky*, 460 S.W.3d at 590 (quoting *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)). "[P]rima facie case" means "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id*. In other words, a prima facie case is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is

---

[4]  Due to our disposition of Robins's second issue, we need not address his first issue, in which he challenges the applicability of the TCPA to the Clinkenbeards' claims. *See* TEX. R. APP. P. 47.1 (stating that appellate court opinions should be as brief as practicable in addressing only issues necessary to final disposition).

true." *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam)); *see also Universal Plant Servs., Inc. v. Dresser-Rand Grp., Inc.*, 571 S.W.3d 346, 359 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("The TCPA requires only that evidence be 'clear,' 'specific,' and 'sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted.'") (quoting *In re Lipsky*, 460 S.W.3d at 590).

The Clinkenbeards' petition alleges that Robins committed legal malpractice. To recover on a claim for malpractice, a client must establish: (1) the attorney owed a duty of care to the client; (2) the attorney breached that duty; and (3) the attorney's breach proximately caused damage to the client. *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017).

The first element of malpractice is not at issue, as Robins concedes that he was the Clinkenbeards' attorney. Robins therefore owed the Clinkenbeards a duty to act with ordinary care, i.e., in a manner consistent with the standard of care expected to be exercised by a reasonably prudent attorney. *See Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989).

As to the second element, breach of the duty of care, the Clinkenbeards' counterclaim alleged with detail that Robins engaged in malpractice by providing unreasonable advice, for instance, in encouraging them to continue litigating a $6,893.21 bounced check claim with the reasonable expectation of a jury award "in

22

excess of $63K"; putting his own interests ahead of his clients' by, for example, creating a situation in which it was not in his best interest to resolve his clients' action unless he was offered attorneys' fees; failing to keep his clients fully informed about settlement discussions and the case proceedings, such as by neglecting to tell them about Noell's settlement offers and failing to inform them about the issues regarding his authority to bring the suit; attempting to collect and threatening to sue his clients for fees they were not responsible for paying under their retainer agreement; causing sanctions and dismissal of his clients' case; and refusing to turn over the client file.

Additionally, the Clinkenbeards provided three affidavits—one from each of the two Clinkenbeard brothers and one from attorney Noell. The affidavits, which are supported by exhibits including emails between Robins and the Clinkenbeards, identify numerous specific instances of Robins's alleged misconduct.

The record also contains a transcript of the "botched" September 18, 2017 hearing on the motion to show authority in the Crisp litigation, in which the trial court "concluded that Robins acted without authority and was dishonest with the Court and opposing counsel," and the Commission's disciplinary petition alleging professional misconduct, which the Clinkenbeards argue is evidence that the State Bar of Texas found Robins's conduct to have been "so extreme and outrageous that

it is seeking to disbar him for multiple violations of the rules of professional conduct."

The legal malpractice counterclaim, affidavits, emails, hearing transcript, and disciplinary petition together provide clear and specific evidence of Robins's negligent conduct, including evidence of Robins's failure to:

- confirm that Crisp was still alive before filing suit in her name;
- consult with the Clinkenbeards regarding authority before filing Crisp's suit;
- obtain authority prior to rejecting multiple settlement offers;
- advise the Clinkenbeards regarding the necessity of probating Crisp's estate in order to advance her claim against Sauls;
- inform the Clinkenbeards realistically regarding the amount of money they could recover;
- prepare for a hearing on a dispositive motion to dismiss for lack of authority;
- take the necessary steps and to advise the Clinkenbeards regarding those steps to correct the lack of authority, despite repeated warnings from the trial court; and
- turn over the Clinkenbeards' client file despite their repeated requests.

See In re Lipsky, STANDARD FOR PFC

With regard to the third element of a malpractice claim combining proximate cause and damages, the Clinkenbeards' petition states that the litigation against Sauls "could have been resolved based on Mr. Sauls' settlement offer" for the full amount of the bounced checks. *See Rogers*, 518 S.W.3d at 400 (listing proximate cause and damages as third element of legal malpractice claim). And the evidence shows that Robins unilaterally rejected two settlement offers, including one for the

24

full amount plus $2,500 for attorney's fees and loss of use. As a result of Robins's failure to show his authority, the Clinkenbeards' pleadings were stricken, their case was dismissed, and they ultimately recovered nothing.

Having reviewed the evidence, we conclude that the Clinkenbeards met their burden to establish by clear and specific evidence a prima facie case for each element of their legal malpractice claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

Robins responds by challenging the Clinkenbeards' evidence. First, he argues that the Clinkenbeards' and Noell's affidavits are "[p]lagued with mere conclusory accusations and other statements." *See Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case."); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a) (stating that in ruling on TCPA motion to dismiss, courts must consider affidavits that "stat[e] the facts on which the liability or defense is based"); *In re Lipsky*, 460 S.W.3d at 592 (explaining that "[b]are, baseless opinions" are not "a sufficient substitute for the clear and specific evidence required to establish a prima facie case" under TCPA). But Robins does not identify which statements in the affidavits he contends are conclusory. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for

25

the contentions made, with appropriate citations to authorities and to the record."). He therefore presents nothing for review under this argument. *See Churchill v. Mayo*, 224 S.W.3d 340, 347 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (holding that brief that "fails to identify which statements in the affidavit are defective" is inadequate under Rules of Appellate Procedure); *see also Pouncy-Pittman v. Pappadeaux Seafood Kitchen*, No. 01-07-00575-CV, 2008 WL 2930183, at *8 (Tex. App.—Houston [1st Dist.] July 31, 2008, no pet.) (mem. op.) (holding that appellant waived issue challenging affidavit as conclusory by failing to specify which statements were conclusory or without support).

Robins next argues that the affidavits contain "completely undetailed hearsay about what Appellant Robins supposedly said (but in fact never said…)," are "unsworn under penalty of perjury," and fail to "detail the affiants' criminal records." Here again, Robins does not identify which statements he contends are hearsay or provide any analysis or authority to show why they are inadmissible, nor does he identify any authority for his assertion that the affiants were required to detail their criminal records or that they were improperly notarized. Accordingly, he has waived these arguments on appeal. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *see also Thomann v. Lakes Reg'l MHMR Ctr.*, 162 S.W.3d 788, 794 (Tex. App.—Dallas 2005, no pet.)

("A general directive to review affidavits for hearsay and impermissible conclusions is not sufficient to direct our attention to the error about which [appellant] complains.").

Additionally, because these objections are to form, not substance, Robins was required to preserve them in the trial court. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (holding that objections to affidavit that it (1) stated that facts in affidavit were true instead of stating that facts in expert's reports were true, (2) lacked notary's signature, and (3) did not attach reports, were objections to affidavit's form, rather than substance, and therefore subject to error preservation rule that required trial court's ruling on objections); *see also* TEX. R. APP. P. 33.1(a)(2)(A) (stating that to preserve error, record must show that trial court ruled on objection or, if it refused to rule, that complaining party objected to refusal to rule). Although Robins did broadly raise his hearsay, "unsworn under penalty of perjury," and failure to "detail the affiants' criminal records" objections in his reply in support of his TCPA motion to dismiss, the record does not reflect that the trial court ruled on the objections. Therefore, Robins failed to preserve them for our review. *See Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679, 688 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (holding, in affirming denial of TCPA motion to dismiss, that appellant failed to preserve complaint that appellee's evidence of prima facie case constituted hearsay because appellant

failed to obtain ruling on objection); *Schmitz v. Cox*, No. 01-15-00199-CV, 2015 WL 6755427, at *3 (Tex. App.—Houston [1st Dist.] Nov. 5, 2015, no pet.) (mem. op.) (holding that TCPA movant's failure to object and obtain ruling waived complaint that nonmovant's affidavit evidence of prima facie case was deficient for lack of personal knowledge).

Robins next objects to the Clinkenbeards' use of the Commission's professional misconduct petition as evidence of malpractice. He argues that the petition, which the Commission filed after having determined that the Clinkenbeards' grievance merited pursuing, "is entitled to no weight in resolving a related civil case as the Bar still has the burden to prove its case by a preponderance of the evidence." *See* TEX. RULES DISCIPLINARY P. R. 3.08(C), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A-1 (TEX. STATE BAR R. art. X, § 9) ("Disciplinary Actions must be proved by a preponderance of the evidence."). Again, Robins fails to provide any authority for this argument, and so we do not consider it. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). In any event, the Commission's petition was based on the Clinkenbeards' grievance over the same conduct by Robins, and their factual allegations are nearly identical. Consequently, any evidence gleaned from

28

the Commission's petition is largely duplicative of that contained in the Clinkenbeards' petition.

Finally, Robins argues that the Clinkenbeards "lack any expert witness testimonial affidavits to purportedly back their allegations of legal malpractice."[5] Although Robins made this objection to the trial court in his reply brief supporting his TCPA motion to dismiss, the record does not reflect that he obtained a ruling on it. *See In re A.J.H.*, No. 14-03-01016-CV, 2004 WL 414093, at *5 n.3 (Tex. App.—Houston [14th Dist.] Mar. 2, 2004, no pet.) (mem. op.) (holding that, in challenge to sufficiency of evidence based on lack of expert testimony, failure to object to testimony of witnesses on basis that they were not qualified as experts to render their opinions waived complaint on appeal) (citing TEX. R. APP. P. 33.1(a)).

Further, Robins fails to cite any authority indicating that expert testimony was required under these circumstances. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *see also, e.g.*, *In re A.L.B.*, No. 01-17-00547-CV, 2017 WL 6519969, at *6 n.4 (Tex. App.—Houston [1st

---

[5] Robins also states, "It is worth noting that in order to prove an action for legal malpractice, the [Clinkenbeards] must establish that they suffered damages," and he avers that he has "successfully managed to recover a replacement of the previously bounced check . . . which had previously necessitated the underlying lawsuit." There is no evidence of this replacement check in the record. We therefore do not consider Robins's apparent argument based upon the check, i.e., that the Clinkenbeards have failed to carry their TCPA burden to show a prima facie case of damages, an element of their malpractice claim against him.

Dist.] Dec. 21, 2017, no pet.) (mem. op.) (holding that complaint that drug test evidence could not be considered without expert witness testimony was waived for failure to raise objection in trial court and for inadequate briefing where appellant did not provide "authority indicating that expert testimony was required under these circumstances"). Robins does not provide any authority for his assertion that establishing clear and specific evidence of a prima facie case requires expert testimony. *Cf. Moldovan v. Polito*, No. 05-15-01052-CV, 2016 WL 4131890, at *15 (Tex. App.—Dallas Aug. 2, 2016, no pet.) (mem. op.) (holding that because "clear and specific evidence" means "enough detail to show the factual basis for [plaintiff's] claim," lack of expert testimony on damages "is not fatal to [nonmovant]'s prima facie case") (quoting *In re Lipsky*, 460 S.W.3d at 590). And the text of the TCPA states no such requirement. *Cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (requiring plaintiff asserting health care liability claim to serve statutorily sufficient expert report to avoid dismissal). And requiring a party to present expert testimony to avoid dismissal so early in the life of a lawsuit, in most cases before discovery has even begun, would be inconsistent with the Texas Rules of Civil Procedure, which generally do not require disclosure of experts until 90 days before the end of the discovery period. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b) (stating that deadline to file TCPA motion to dismiss is 60 days after service of legal action), *with* TEX. R. CIV. P. 195.2(a) (requiring parties

seeking affirmative relief to designate experts 90 days before end of discovery period or 30 days after served with request, "[u]nless otherwise ordered by the court").

Finally, requiring a nonmovant to provide expert testimony to defeat dismissal of his claims at the TCPA stage asks more of him than the Texas Supreme Court has held his burden to be: to provide a "minimum quantum" of clear and specific evidence to support a rational inference that his allegations of fact are true on each element of each claim. *See In re Lipsky*, 460 S.W.3d at 590. In any event, expert testimony is not always necessary for a plaintiff to prevail on a legal malpractice claim. *See Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119 (Tex. 2004) (holding that although expert witness testimony is required in legal malpractice cases when causal link is "beyond the jury's common understanding," "[i]n some cases the client's testimony may provide this link").

Because all of Robins's challenges to the Clinkenbeards' prima facie case are unpreserved or inadequately briefed, we conclude that he has not presented grounds for reversal of the trial court's implied finding that the Clinkenbeards carried their TCPA burden to establish a prima facie case for legal malpractice by clear and specific evidence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) (stating that court may not grant TCPA motion to dismiss if nonmovant establishes

by clear and specific evidence prima facie case for each essential element of claim).

We overrule Robins's second issue.

## E.  *Defenses*

In his third issue, Robins argues that he is entitled to dismissal under the TCPA because he established by a preponderance of the evidence each essential element of valid defenses to the Clinkenbeards' malpractice claim. *See id.* § 27.005(d) (stating that once TCPA nonmovant establishes prima facie case for its claim, movant may still obtain dismissal by establishing by preponderance of evidence each essential element of valid defense to nonmovant's claim). Specifically, he asserts that (1) he did have Crisp's permission to file the suit against Sauls; (2) his "expressly tentative opining" to the Clinkenbeards about the recovery they could expect from Crisp's case "was candor, not malpractice"; (3) he did tell the Clinkenbeards that Crisp's case would be harmed if they did not sign the proposed affidavits of heirship; (4) he "coped with difficult circumstances" when he appeared at the September 18, 2017 hearing; and (5) the Clinkenbeards were aware of Noell's settlement offers.

This catalogue of assertions fails to identify a "valid defense" to the Clinkenbeards' legal malpractice claim. *See id.* These assertions are more in the nature of rebuttal to the Clinkenbeard's prima facia case, and four of the five

assertions merely dispute the Clinkenbeards' facts. Because we only consider the Clinkenbeards' evidence in determining whether they met their burden of establishing a prima facie case under the TCPA, we do not consider these factual assertions or the evidence Robins claims support them. *See West v. Quintanilla*, 573 S.W.3d 237, 243 n.9 (Tex. 2019) ("[Movant] vigorously disputes many of [nonmovant]'s factual allegations, but at this point we must decide only whether [nonmovant] has established a prima facie case by clear and specific evidence. Prima facie evidence is merely the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true. A finding that [nonmovant] has met his TCPA burden does not establish that his allegations are true." (quotations omitted)); *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 440 n.9 (Tex. 2017) (refusing to consider TCPA movant's rebuttal evidence in determining whether nonmovant established prima facie case, stating that although movant "disputes [nonmovant's factual assertion] . . . at this stage of the proceedings we assume its truth").

The only item on Robins's list of "defenses" that is not a factual assertion challenging the Clinkenbeards' prima facie case is the second, concerning his comment to the Clinkenbeards regarding the amount of money they could recover on Crisp's bounced-check claim. Robins argues that this comment does not constitute malpractice because the retainer agreement "makes it sufficiently clear"

33

that he "does not guarantee the outcome of the trial" and his comment "by no means states as a fact what the jury outcome would be." Even construing this as an argument that the Clinkenbeards' allegations, taken as true, are insufficient as a matter of law to support a malpractice claim, we do not consider it because Robins has not provided any analysis or authority to support it. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

We overrule Robins's third issue.

## Conclusion

We affirm the trial court's order denying Robins's TCPA motion to dismiss.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Goodman, and Countiss.